IN THE UNITED STATES DISTRICT COURT

OR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EVONCA SAKINAH S. ALIAHMED<br>a/k/a Hermione Kelly Ivy Winter<br>f/k/a David Allen Allemandi,<br><br>      Plaintiff,<br><br>v.<br><br>BUREAU CHIEF SHANE TROXLER,<br>et al.,<br><br>      Defendants. | Civ. No. 20-526-LPS |

**MEMORANDUM**

## I. INTRODUCTION

Plaintiff Evonca Sakinah S. Aliahmed ("Plaintiff"), a prisoner incarcerated at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, commenced this action on April 21, 2020, by filing a complaint (D.I. 1) pursuant to 42 U.S.C. § 1983. She appears *pro se* and has been granted leave to proceed *in forma pauperis*.

On April 30, 2020, Plaintiff filed a motion for injunctive relief raising issues relating to needed medical care, suicidal ideation, safe housing, the inability to practice her religion, and a transfer to Baylor Women's Correctional Institution ("BWCI"), all related her gender identification as a female. (D.I. 4) She followed the motion with a supplemental emergency motion for injunctive relief on May 20, 2020. (D.I. 13) To date, the Complaint has not been screened and service has not been effected upon any Defendant. On May 28, 2020, the Court ordered Defendant JTVCC Warden Robert May ("Warden May") to respond to the issues of medical care, suicide risk, and the safety of Plaintiff's housing raised in the motions. (D.I. 18)

1

## II. BACKGROUND

In 2016 Plaintiff filed a lawsuit seeking treatment of gender dysphoria. *See Winter v. Mills*, Civ. No. 16-890-LPS (D. Del. Oct. 3, 2016). Since then, she has continued, unabated, commencing actions raising numerous issues, all it seems with the ultimate goal of obtaining gender reassignment surgery and transfer to a women's correctional facility and/or release from prison. *See* Civ. Nos. 17-1280-LPS, 17-1322-LPS, 17-1432-LPS, 18-351-LPS, 19-300-LPS, 19-487-LPS, 19-507-LPS, 19-1427-LPS, 20-134-LPS, 20-491-LPS, and 20-814-LPS.[1]

Plaintiff's filings provide great detail explaining why hormone replacement therapy and gender reassignment surgery is necessary and why she should be assigned different housing. Given the issues raised in her motions, and particularly medical care, suicide risk, and safe housing, on May 28, 2020 the Court ordered the JTVCC warden to address those issues. (D.I. 18) Plaintiff has also filed requests for counsel, a motion for IFP Marshals Service, a motion to submit supplemental material, and a motion to correct an order. (D.I. 9, 15, 21, 22, 26) The motion for injunctive relief is opposed, and Plaintiff has filed a reply. (D.I. 27-29, 32-36) The parties have submitted additional letters and materials. (D.I. 38-45)

## III. INJUNCTIVE RELIEF

### A. Legal Standards

A preliminary injunction is "an extraordinary remedy that should be granted only if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff;

---

[1] Civil Case Nos. 17-1322-LPS and 17-1432-LPS were consolidated, Plaintiff's request for counsel was granted, and she is currently represented by counsel in that pending consolidated case. Plaintiff proceeds *pro se* in the following pending cases: Consolidated Civil Case Nos. 20-134-LPS and 20-491-LPS, Civ. No. 19-507-LPS, and Civ. No. 20-814-LPS. All other cases are closed.

2

(3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("*NutraSweet II*"). The elements also apply to temporary restraining orders. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (temporary restraining order that continues beyond time permissible under Rule 65 must be treated as preliminary injunction, and must conform to standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *See Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

### B. Discussion

Despite the voluminous filings, Plaintiff has not met her burden for injunctive relief. As will be discussed, Plaintiff has not demonstrated a likelihood of success on the merits or irreparable harm, and has not proven that immediate injunctive relief is justified. Accordingly, the Court will deny Plaintiff's motions for injunctive relief regarding the issues of medical care, suicide risk, and housing and deny without prejudice to renew any remaining requests for injunctive relief raised in the motions (D.I. 4, 13) following resolution of the issue of exhaustion of administrative remedies and screening of any issues that have been exhausted. (*See* § V., *infra*)

#### 1. Medical Issues; Gender Dysphoria; Suicide Risk

Plaintiff seeks an order requiring Defendants to provide her gender reassignment surgery. The Court ordered Warden May to address the issue. The record reflects that since her gender dysphoria diagnosis in March 2017 (D.I. 30 at 13), Plaintiff has received and continues to receive

3

extensive treatment on a regular basis by medical and mental health personnel. (*See, e.g.*, D.I. 30 at 162-232; D.I. 33 at 1-21 [October 31, 2019 to June 3, 2020 medical/mental health records]; D.I. 45)

April 2020 notes indicate that Plaintiff's hormone replacement therapy did not begin prior to January 2020 because medical and mental health personnel needed "a brief period of behavioral and clinical stability, and Plaintiff was unable or unwilling to complete that period to allay significant clinical concerns" prior to beginning the hormone regimen. (*Id.* at 181) It is noted that Plaintiff has sought sex reassignment surgery and that "it is critical to move forward cautiously and assess the impact of less invasive and severe forms of treatment at this time." (*Id.*) The notes state, "[a]s [Plaintiff] recently started HRT [*i.e.*, hormone replacement therapy], response to the treatment will be assessed in regard to her treatment plan going forward. [Plaintiff] is encouraged to demonstrate behavioral stability, including maintaining affective regulation and reduction in conditional threats of self-harm to have her desired ends met. Currently, . . . [Plaintiff's] treatment plan is adequate. . . ." (*Id.*) The records indicate that Plaintiff's written communications "appear indicative of emotional instability" and "will likely interfere with [Plaintiff] being perceived as an appropriate candidate for SRS (*i.e.*, sex reassignment surgery)." (*Id.* at 177) Finally, the record reflects that Plaintiff's current HRT dosing is provided at the direction of an endocrinologist and that Plaintiff's hormone levels are monitored through laboratory testing. (D.I. 45)

Plaintiff's filings are replete with references to thoughts of suicide or self-harm. Indeed, her most recent letter to the Court states that she "doubts" she will "even last six months before [she] has to end it." (D.I. 40 at 2) However, recent June 2020 medical records show a determination by medical personnel that Plaintiff was not "demonstrating self-directed violence." (D.I. 30 at 62-163) In addition, on May 21, 2020, the day after Plaintiff filed her supplemental emergency motion for a temporary restraining order (*see* D.I. 13), medical records state that Plaintiff "was clear in her denial

4

of current suicidal ideation" (*id.* at 166-68). Plaintiff also denied suicidal ideation on April 23, 2020. (*Id.* at 177) Notably, Plaintiff's medical records indicate that she is frequently evaluated by medical and mental health professionals to ensure that immediate action is taken should Plaintiff pose a risk of self-harm and that threats of self-harm are taken seriously and promptly addressed. (*See* D.I. 28 at 396-400, 457-62, 485-90; D.I.29 at 446-55; D.I. 30 at 25, 26, 160, 161-242)

As is well-established, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care yet believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. "[M]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

The record reflects that Plaintiff receives continual medical care for both her physical and mental conditions. Although she may disagree with the treatment received, would like to increase the dosage of HRT, and wants surgery expedited, her displeasure does not merit injunctive relief. The record reflects that her mental and mental health condition is monitored during hormone replacement therapy and a conservative approach is being taken as to sex reassignment surgery. In

5

addition, the record reflects that Plaintiff's threats are self-harm are not ignored and her mental status is continually monitored.

In sum, Plaintiff has failed to demonstrate a probability of success on the medical issues raised. Injunctive relief as to this claim is not supported by the record and the motions for injunctive relief will be denied.

### 2. Safety of Housing Assignment

Plaintiff complains of unsafe housing. The record reflects that JTVCC staff takes precautions to keep Plaintiff safe, including transferring cellmates for Plaintiff's safety and protection and housing Plaintiff without any cellmates. (*See* D.I. 28 at 396-400, 457-62, 485-90; D.I. 29 at 84-89, 431-33, 435-38, 446-55; D.I. 30 at 119-21, 154, 156-58) Plaintiff is currently housed in a single cell in Building 17 due to her security classification and a recent sanction. (D.I. 29 at 453)

The record reflects that between October 2, 2019 and April 21, 2020, Plaintiff was issued numerous disciplinary write-ups for her conduct. (D.I. 28 at 463-66; D.I. 29 at 447-55, 457-99) On January 14, 2020, Plaintiff's security classification was increased to medium security because of the number of points she had, attributable in part to her disciplinary infractions. (D.I. 29 at 451) Once notified of the classification change and a transfer to a medium security building, Plaintiff refused the transfer and stated that she would hurt herself. (*Id.*) After Plaintiff received a write-up on April 21, 2020, she was sanctioned to six months in maximum security. (D.I. 29 at 453; D.I. 30 at 177) According to Major John Brennan, Plaintiff's security concerns are addressed and she is provided the safest housing arrangements possible. (D.I. 29 at 454) Currently she is housed alone and has recreation with one inmate, who has not been identified as a security concern. (*Id.*)

Ensuring the safety of a transgender inmate can present a wide range of issues for prison officials and the law compels substantial deference to their decisions. *See generally Prudent Policy:*

6

*Accommodating Prisoners with Gender Dysphoria*, 12 Stan. J. Civ. Rts & Civ. Liberties 283 (2016) ("Courts afford prisons wide latitude to craft institutional policy, including policies for classifying inmates according to sex and security risk and assigning housing for them."); *see also Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 48-52, 57 (D.D.C. 2013) (recognizing post-operative transgender inmate as female and criticizing jail for knowingly housing her among men).

The record reflects that, here, prison personnel have attempted to address Plaintiff's safety concerns and house her in the safest housing arrangements possible. The record also reflects that Plaintiff bears some responsibility for her housing assignment given the numerous time she violated prison rules, resulting in disciplinary reports and the imposition of sanctions.

The Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits as to the housing issue. Therefore, the motions for injunctive relief on this issue will be denied.

### 3. Transfer to BWCI

Finally, the Court addresses the issue of a transfer to BWCI. Both this Court and the State Court have previously considered, and denied, Plaintiff's motions or petitions seeking a transfer to BWCI.

"Delaware law provides that inmates in the prison system have no protected liberty interest in a particular housing classification or particular housing unit. Moreover, the transfer of prisoners from one housing unit [to another] falls within the discretion of the discretionary duties of prison officials." *Desmond v. Phelps*, 36 A.3d 348, 2012 WL 424891, at *1 (Del. Feb. 8, 2012) (unpublished); *see also Winter v. Delaware Dep't of Justice*, 210 A.3d 733, 2019 WL 2151659, at *1 (Del. May 15, 2019) (unpublished) (denying Plaintiff's petition for writ of mandamus compelling her transfer to female prison). Nor does Plaintiff have a due process right to be incarcerated at a particular institution such as BWCI. *See Olim v. Wakinekona*, 461 U.S. 238, 251 (1983).

7

Where a plaintiff requests an injunction that would require the Court to interfere with the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Prison officials require broad discretionary authority since the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The federal courts are not overseers of the day-to-day management of prisons, and the Court will not interfere in the Department of Correction's determination where to house Plaintiff.

Plaintiff has repeatedly sought a transfer to BWCI. Similar to her other attempts, here she has failed to demonstrate a likelihood of success on the merits on the issue of a transfer to BWCI. Therefore, the motions for injunctive relief will be denied.

## IV. MISCELLANEOUS MOTIONS

### A. Requests for Counsel

Plaintiff seeks counsel on the grounds that she is unable to afford counsel; counsel is in the interest of justice and the public; the main issues are emergent; expert witnesses are required; she does not have the resources to prosecute the case; she is incarcerated; she has limited communication with the outside world; she is housed in a restrictive setting with limited legal resources; she has limited knowledge of the law; she is severely mentally ill; she has asked her counsel in other cases to represent her in this case but has received no response; and there will be conflicting evidence. (D.I. 15, 22)

Because Plaintiff raises the issue of her mental illness, the Court has a responsibility to inquire *sua sponte* under Fed. R. Civ. P. 17(c)(2), whether, as a *pro se* litigant, she is incompetent to litigate this action and, therefore, is entitled to either appointment of a guardian ad litem or other measures to protect her rights. *See Powell v. Symons*, 680 F.3d 301, 303, 307 (3d Cir. 2012). Rule

8

17(c)(2) provides that "[t]he court must appoint a guardian ad litem-or issue another appropriate order-to protect a minor or incompetent person who is unrepresented in an action."

Rule 17(c) applies "[i]f a court [is] presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court receive[s] verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Powell*, 680 F.3d at 307 (3d Cir. 2012) (citing *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)). The court "need not inquire *sua sponte* into a *pro se* plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity" but, "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought into play." *Id.* (citations omitted). The decision whether to appoint a next friend or guardian ad litem rests with the sound discretion of the district court. *See Powell*, 680 F.3d at 303.

Plaintiff contends that she is "severely mentally ill." Medical records indicate that she has been diagnosed with gender dysphoria; antisocial personality disorder; borderline personality disorder; schizotypal personality disorder; and alcohol use disorder, severe, in remission in controlled environment — but the records do not suggest that she is incompetent or even possibly incompetent. (D.I. 30 at 164) Also, medical records dated May 17, 2020 state that Plaintiff is "not presently taking any psychotropic medications." (*Id.* at 168) In light of the medical records and, in accordance with *Powell*, the Court has no duty to conduct a *sua sponte* determination of competency under Rule 17(c)(2).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel. *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*,

9

6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155; *see also Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989)(§ 1915(d) – now § 1915(e)(1) – does not authorize federal court to require unwilling attorney to represent indigent civil litigant, operative word in statute being "request").

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel. Factors to be considered include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *See Tabron*, 6 F.3d at 157.

Several of the *Tabron* factors militate against granting Plaintiff's request for counsel at this time. To date, Plaintiff has ably represented herself and presented her claims. Also, Plaintiff has experience litigating claims. Finally, this case is in its early stages, and it is not clear if Plaintiff has exhausted her administrative remedies as to all issues, as is required under the PLRA. Accordingly, the Court finds that counsel is not necessary at this time. Therefore, the requests will be denied without prejudice to renew.

### B. Other Motions

Plaintiff prematurely requests that the United States Marshal Service serve the complaint. The motion will be denied without prejudice as premature. (D.I. 9)

Plaintiff moves to submit supplemental material. The motion will be granted. (D.I. 21)

Plaintiff moves to correct the Court's May 28, 2020 Order to include ordering the Warden to address the following issues/claims: her release from prison; the addition of daily and yearly time precluding her release; and the infringement of her right to practice religion. The motion will be denied. (D.I. 26) The Court's order set forth the issues to address. In addition, to the extent Plaintiff seeks her release, she may not do so via a civil rights action. "A petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody – whether outright freedom, or freedom subject to the limited reporting and financial constrains of bond or parole or probation.'" *Gottstein v. Finley*, 2020 WL 3078028, at *3 (M.D. Pa. June 10, 2020) (citation omitted).

## V.    EXHAUSTION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").

In his opposition to Plaintiff's motions for injunctive relief, Warden May raises the issue of exhaustion of administrative remedies. (*See* D.I. 27 at 26-27) Because exhaustion is relevant to the claims that Plaintiff may raise, Plaintiff and Warden May will be ordered to brief whether Plaintiff has exhausted her administrative remedies as to each claim raised in the Complaint.

11

## VI. CONCLUSION

For the above reasons, the Court will: (1) deny Plaintiff's motions for injunctive relief regarding the issues of medical care, suicide risk, and housing and deny without prejudice to renew any remaining requests for injunctive relief raised in the motions (D.I. 4, 13) following resolution of the issue of exhaustion of administrative remedies and screening of any issues that have been exhausted; (2) deny without prejudice as premature Plaintiff's motion for IFP Marshal Service (D.I. 9); (3) deny without prejudice to renew Plaintiff's requests for counsel (D.I. 15, 22); (4) grant Plaintiff's motion to submit supplemental material (D.I. 21); (5) deny Plaintiff's motion to correct Court Order (D.I. 26); and (6) order Plaintiff and Defendant Warden May to brief the issue of whether Plaintiff has exhausted her administrative remedies as to each claim raised in the Complaint.

Plaintiff is placed on notice that the Court will docket, but not consider, future repetitive filings seeking the same or similar relief given that no defendants have been served and the operative pleadings will have to be screened by the Court once the exhaustion issue has been resolved.

An appropriate Order follows.

July 10, 2020
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE