IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EVONCA SAKINAH S. ALIAHMED,    )
a/k/a Hermione Kelly Ivy Winter    )
f/k/a David Allen Allemandi,    )
                                )
            Plaintiff,    )
                                )
        v.    )        C.A. No. 20-526-VAC
                                )
BUREAU CHIEF SHANE TROXLER,    )
et al.,    )
                                )
            Defendants.    )

## <u>**MEMORANDUM OPINION**</u>


Evonca Sakinah S. Aliahmed, Sussex Correctional Institution, Georgetown, Delaware.  Pro Se Plaintiff.

Robert Michael Kleiner, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant Warden Robert May.


April 7, 2022
Wilmington, Delaware



NOREIKA, U.S. DISTRICT JUDGE

Plaintiff Evonca Sakinah S. Aliahmed ("Plaintiff"), an inmate at the Sussex Correctional Institution in Georgetown, Delaware, commenced this action on April 21, 2020 raising a number of claims.[1] (D.I. 3). She appears *pro se* and has been granted leave to proceed *in forma pauperis.* (D.I. 10). On July 10, 2020, the Court entered an order for Plaintiff and Defendant Warden Robert May to brief the issue of whether Plaintiff exhausted her administrative remedies as to each claim raised in the Complaint. (D.I. 48). Briefing is complete. (D.I. 57, 67). The Court will also review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

## I.   LEGAL STANDARDS

### A.      Exhaustion

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in her complaint. *Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814) (3d Cir. 2019). "Failure to

---

[1]      Plaintiff was housed at the James T. Vaughn Correctional Center in Smyrna, Delaware, when she filed the Complaint.

exhaust is . . . is not a pleading requirement for the prisoner-plaintiff."). *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013). Failure to exhaust administrative remedies must be pleaded and proved by the defendant. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies only when administrative remedies are "available." *See Ross v. Blake*, 578 U.S. 632 (2016). Administrative remedies are not available when the procedure "operates as a simple dead end--with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies."). "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859).

### B.    Screening of Complaint

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect

to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and the Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Before dismissing a complaint for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court, however, must grant Plaintiff leave to amend unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 558 (2007).  Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted).  In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570).  Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility.  *See Johnson v. City of Shelby*, 574 U.S. 10 (2014).  A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted.  *See id*. at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief.  *See Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

## II.   <u>DISCUSSION</u>

### A.   **Exhaustion**

Inmate Grievance Policy No. 4.4 provides that "[g]rievances can be returned unprocessed if they . . . were filed after the expiration of the applicable filing time period" or "are merely requests for information or services that may be obtained by other means." (D.I. 57-4 ¶ VI.13). The non-emergency grievance resolution consists of three steps. (*See id.* ¶ VII). Step one provides for informal resolution. At step two the resident grievance committee/subject matter expert panel makes a recommendation to the warden who then makes a decision based upon the recommendation which may be appealed. Upon appeal, at step three, the bureau grievance officer makes a recommendation to the bureau chief who accepts or rejects a recommendation. The bureau chief's decision is final.

An emergency grievance concerns matters which, under regular policy limits would subject the inmate to a substantial risk of personal, physical or psychological harm. (*See id*. ¶ V). Emergency grievances are forwarded to the facility warden or bureau level subject matter expert who determines if the grievance qualifies as an emergency. (*See id*. ¶ VII). If the grievance qualifies as an emergency it is immediately addressed. (*Id*.). If not, it is returned for regular grievance processing. (*Id*.). If the grievant rejects the decision and responsive action, the grievant must submit a written appeal within 24 hours from receipt of the decision and it is forwarded to the bureau chief who makes a decision on the emergency grievance appeal within 72 hours. (*Id*.).

The Grievance Process for Healthcare Complaints, Policy No. A-10, consists of three steps. (*See* D.I. 57-5). Step one provides for informal resolution. (*See id*. ¶ VI.E. Step 1). At step two, if the offender rejects the informal resolution a hearing is held with the medical grievance committee who makes a recommendation. (*See id*. ¶ VI.F. Step 2). At step three, the offender

appeals the step two recommendation to the Bureau of Healthcare, Substance Abuse, and Mental Health Services ("BHSAMH") bureau grievance officer who submits a recommendation to the BHSAMH bureau chief or designee who reviews the recommendation and renders a final decision. (*See id*. ¶ VI.G. Appeals).

Emergency medical grievances are forwarded to the warden or a designee for review who may forward the grievance to the highest ranking licensed medical provider at the facility who determines if the grievance qualifies as a medical emergency.  (*See id*. ¶ VI.H.1.).  If the grievance qualifies as an emergency the highest ranking licensed medical provider shall provide a solution and respond within 24 hours of receipt.  (*See id*. ¶ VI.H.1.).  If the offender rejects the decision, the offender must submit a written appeal within 24 hours from receipt of the decision and it is forwarded to the bureau chief who makes a decision on the emergency grievance appeal by the next business day after receipt of the appeal.  (*See id*. ¶ VI.H.3, 4).  If it is determined that the grievance does not qualify as an emergency, it is returned for regular grievance processing.  (*See id*. ¶ VI.H.5).

### B.    Claims

The Complaint lists violations and/or abuses of: (1) the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, (2) 42 U.S.C. §§ 1985 and 1986; (3) the Americans with Disabilities Act; (4) the Religious Freedom Restoration Act; (5) the Racketeer Influenced and Corrupt Organization Act; (6) 11 Del. C. § 1304(a) hate crime; (7) 11 Del. C. §§ 222(26) and (28); (8) 11 Del. C. § 763, sexual harassment, (9) 11 Del. C. §§ 6504, 6506(a), 6529(b); (10) 11 Del. C. §§ 1258, 6517, and 6504 and 29 Del. C. § 8903; and, (11) malpractice.  A liberal reading of the Complaint indicates the claims are: (1) denial of medical care such as electrolysis/hair removal and sex reassignment surgery; (2) failure to address suicide risk; (3) failure to transfer Plaintiff to

Bailor Women's Correctional Institution ("BWCI"); (4) a religion claim denying Plaintiff's request to wear a hijab; (5) denial of safe housing; (6) retaliation; and, (7) the failure to disband the Gender Dysphoria Consultation Board (GDCB).

The Complaint states that "multi grievances had been filed regarding issues of this Complaint thought to be allowed by policy #A-11 and #4.4. Some were asked to be processed as an emergencies, specifically regarding the grievance due to "organ damage and impending death and irreversible." (*Id*. at 14). It also states that "[a]ll grievances and additional info surrounding all grievable issues in this complaint are attached as Exhibit A. Exhaustion of remedies is not available for many issues by grievances." (*Id.* at 17). "Unless otherwise specifically stated all remedies have been exhausted. Many things cannot be grieved, so the grievance process cannot be used to exhaust remedies per policy #4.4." (*Id* at 26).

The issues raised, whether Plaintiff fully exhausted her administrative remedies, and screening of claims where appropriate are discussed below.

## 1.   Denial of Medical Care such as Electrolysis/Hair Removal and Sex Reassignment Surgery

As to sex reassignment surgery and hair removal, the Complaint alleges that:

> A numerous amount of notes supporting this complaint and exhaustion are discussed in my medical and mental health charts along with log book hand written records, my inmate file, grievances, and a ton of e-mail communications amongst all the defendants, GTL communications on tablet, and in house-mail correspondences. All of these "combined" prove proof of exhaustion of remedies.

(D.I. 1 at 12-13). The Complaint states that the delay and "no orders for hair removal was recognized in grievance #371650. It was ordered then with upheld grievance on 10/11/2017." (*Id*.

at 21). Grievances pertaining to this Complaint are No. 490713[2] and No. 492972.[3]   (*Id*.). Grievance Nos. 490713 and 492972 were appealed on April 3, 2020 and "no response."   (*Id*. at 17).

Grievance No. 395693, submitted March 2, 2018, seeking hair removal is fully exhausted. (D.I. 67-17 at 2-13).   Plaintiff explained that Dr. Timme O. Robin approved wax strips while Plaintiff waited for permanent laser facial hair removal, and Carla Miller ("Miller") denied the wax strips.   The grievance was resolved on April 25, 2018.   (*Id*.).   Records indicate the grievance was fully exhausted when the Complaint was filed on April 20, 2020.   Miller, however, is not a defendant.   The grievance does not refer to any other individuals.

Other hair removal grievances include Grievance No. 371650, submitted June 13, 2017.   It sought hair removal and was resolved on October 17, 2017, over two years and ten months before the Complaint was filed on April 20, 2020.   (D.I. 63 at 53-62).   Section 1983 has no statute of limitations of its own and borrows Delaware's statute of limitations for personal-injury torts. *Randall v. City of Philadelphia Law Dep't*, 919 F.3d 196, 199 (3d Cir. 2019) (citing 42 U.S.C. § 1983).   In Delaware, that period is two years.   *Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013) (citing 10 Del. C. § 8119).   Therefore, the claims raised in Grievance No. 371650 are time-barred by the applicable two-year limitation period.

Other grievances seeking hair removal were not exhausted when the Complaint was filed on April 20, 2020.   Grievance No. 482752, submitted December 27, 2019, seeking hair removal was denied because the grievance was not an emergency and it advised Plaintiff that she could continue with the routine grievance process if she wished.   (D.I. 67-8 at 2-8; D.I. 67-17 at 19-33,

---

[2]      Seeking hair removal.

[3]      Seeking sex reassignment or vagino-plastic surgery.

35; D.I. 67-21 at 4).  The grievance was resolved on June 4, 2020.  (D.I. 67-17 at 28).  Grievance No. 490713, submitted February 7, 2020, asked that the hair removal plan be followed.  (D.I. 67-17 at 34, 38-47, 49-51).  Administrative remedies were fully exhausted on July 20, 2020.  (*Id.* at 34).

Plaintiff submitted several grievances seeking surgery.  None were exhausted when the Complaint was filed on April 20, 2020.  Grievance No. 492972, submitted February 24, 2020, sought sex reassignment surgery or vagino-plastic surgery.  (*See* D.I. 63 at 83-91; D.I. 67-11 at 22-32).  On June 10, 2020, the grievance was denied in certain aspects and upheld in certain aspects.  (*Id.*).  Grievance No. 497797, submitted March 18, 2020, sought emergency sex reassignment surgery.  Plaintiff's appeal was submitted to the Bureau Chief on July 6, 2020.  (*See* D.I. 59 at 38-45; D.I. 63 at 92-100; D.I. 67-11 at 2-11).  Grievance No. 502970, submitted April 18, 2020, asked that the grievance be processed as an emergency due to death and asking medical to follow policies and standards and to provide appropriate treatment.  (*See* D.I. 61 at 57-62).  Plaintiff appealed on April 23, 2020 and withdrew the grievance on June 16, 2020.  (*Id.*).

Except for one grievance, Plaintiff failed to fully exhaust administrative remedies on the medical issues prior to commencing this action.  The fully exhausted grievance sought hair wax removal treatment and complains of actions taken by an individual who is not a named defendant.  Therefore, the medical claims will be dismissed.  Plaintiff will be given leave to file an amended complaint only as to the claims raised in Grievance No. 395693, Plaintiff having failed to administratively exhaust all other medical claims.

## 2.    Suicide Risk

Plaintiff takes the position that she is not required to exhaust the issue of risk of suicide because it is "unarguably an 'urgent medical need.'"  (D.I. 67 at 6).  The grievance procedures do

not contain an exception that inmates are not required to exhaust this issue. To the contrary, Policy No. 4.4 defines an emergency grievance as one concerning maters that would subject an inmate to a substantial risk of personal, physical, or psychological harm. (D.I. 57-4 at 2).

In Grievance No. 473207, submitted October 27, 2019, Plaintiff asked to see a provider and for things to be done. (D.I. 67-1 at 2-3; D.I. 67-17 at 14-16). The grievance was returned as unprocessed. (*Id*.). Plaintiff claims the grievance supports her position that she is not required to exhaust the issue of suicide risk. (D.I. 67 ¶ 12). The grievance, however, makes no reference to suicide risk. (D.I. 67-17 16).

All other grievances that raise the issue of suicide risk were not fully exhausted. Grievance No. 500194, submitted April 6, 2020, complained that Plaintiff's chronic care treatment was not continuing, surgery was delayed, and there is no assistance with cancer education, all of which could lead to death by suicide. Plaintiff withdrew the grievance on June 16, 2020. (*See* D.I. 61 at 45-50). The Complaint states the issue was not fully exhausted when the Complaint was filed on April 20, 2020. (D.I. 1 at 22-23).

Grievance No. 502970, submitted April 18, 2020, asked that the grievance be processed as an emergency due to death and asked medical to follow policies and standards and to provide appropriate treatment. (*See* D.I. 61 at 57-62; D.I. 67-11 at 12-21). Plaintiff appealed on April 23, 2020, and then withdrew the grievance on June 16, 2020. (*Id*.). The grievance was not fully exhausted when the Complaint was filed on April 20, 2020. Grievance No. 506013, submitted May 17, 2020, sought treatment in an effort to prevent death or less severe results. (D.I. 63 at 69-76). The grievance did not exist when the Complaint was filed on April 20, 2020 and, therefore, exhaustion was impossible.

The risk of suicide claim is not fully exhausted and, therefore, the claim will be dismissed.

### 3.      Transfer To BWCI

Plaintiff seeks a transfer to BWCI.  This claim, however, is not grievable.  In addition, Plaintiff has no constitutional right to be housed at the institution of her choosing.  The Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose.  *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003)).  In addition, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or outside that state.  *Olim v. Wakinekona*, 461 U.S. 238, 251(1983).  Finally, "maintaining institutional security and preserving internal order and discipline" are the central goals of prison administration.  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).  The Court has no authority to dictate Plaintiff's housing assignment or prison classification.  The claim will be dismissed as frivolous.

### 4.      Religion

The Complaint alleges that Plaintiff is sincere about her religion, she cannot pray, and is not allowed to grieve the issue per Warden May, and she references Exhibit I in the Complaint. (D.I. 1-9 at 2-4).  Grievance No. 500191 is found at Exhibit I.  (*Id.*).  For relief, Plaintiff asked "to be allowed to pray as a female with a hijab at all times allowed to wear but must remove by security privately . . . just to check for suspected dangerous contraband."  (D.I. 1 at 27).

In Grievance No. 500191, submitted April 4, 2020, Plaintiff sought a replacement hijab and rug after they were destroyed and asked for permission to use a sheet as a hijab until receipt of a replacement.  (*Id.* at 3).  On an unknown date prior to commencement of this action, the grievance was returned as unprocessed as "the matter does not meet policy standards to be processed through the grievance system . . . and the misuse of a sheet in the fashion indicated . . .

is prohibited by policy." (D.I. 61 at 19-22). Hence, the claim for a replacement hijab appears fully exhausted.

Grievance No. 505700, submitted May 8, 2020, did not exist when the Complaint was filed on April 20, 2020 and, therefore, exhaustion was impossible. (D.I. 61 at 84-91; D.I. 63 at 101-105). The grievance was resolved in Plaintiff's favor on June 16, 2020, when Plaintiff's "request to be allowed to possess religious head covering [was] approved" with the chaplain assisting Plaintiff through the process. (D.I. 61 at 90). Because of the favorable resolution, there is no effective relief for the Court to grant to Plaintiff and, therefore, the issue is moot. *See Alpha Painting & Constr. Co., Inc. v. Delaware River Port Auth. of Pennsylvania New Jersey*, 822 F. App'x 61, 66 (3d Cir. 2020) (citing *Freedom from Relig. Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016)).

In light of the outcome of Grievance No. 505700, the hijab claim is moot, Plaintiff having received the relief requested. The claim will be dismissed.

### 5.    Safe Housing

The Complaint alleges that due to safety concerns as a female in a male facility, Plaintiff must be placed in SHU housing and cannot be housed in the compound with men. (D.I. 1 at 23-24). Plaintiff alleges this violates PREA, the constitution, and is discriminatory because she was not transferred to BWCI. In addition, she contends she responded to this issue "efficiently" due to Defendants' refusal to allow new grievances based on prior grievances, delays, denial of her right to be heard on the risk of suicide, exhaustion of disciplinary proceedings, attempts of suicide, PREA qualifies her for a transfer to BWCI, BWCI housing is a classification issue and cannot be grieved, and Defendants do not deny that she exhausted her claims. (D.I. 67 ¶¶ 6, 7, 13A, 14, 15, f)). The responses Plaintiff relies upon, however, do not address the issue of unsafe housing.

Moreover, the allegations of unsafe house run counter to the facts she provides that she is not housed in the compound and is housed in SHU due to safety concerns in housing Plaintiff with male inmates.

As discussed, Plaintiff has no constitutional right to be housed in the prison of her choosing. To the extent Plaintiff alleges a constitutional violation based upon her classification, it is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (Constitution does not give rise to liberty interest in avoiding transfer to more adverse conditions of confinement); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. "As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon [her] and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)). *See also Sandin v. Conner*, 515 U.S. 472, 480 (1995). Therefore, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally protected liberty interest in her choice of housing. Neither Delaware law nor Department of Correction regulations, however, create a liberty interest in a prisoner's classification within an institution. *See* 11. Del. C. § 6529(e). Plaintiff's classification claim fails.

With regard to unsafe housing, the Complaint states that grievance No. 501304 was returned unprocessed.  (D.I. 1 at 25).  Grievance No. 501304, submitted April 10, 2020 as an emergency grievance, complaining of sexual harassment and unlawful sexual contact, that charges be filed, and she receive necessary treatment.  (*See* D.I. 1-8 at 2-5; D.I. 61 at 51-53).  The request was denied as "not an emergency grievance," a PREA investigation was instituted to address Plaintiff's concerns, and the grievance was returned as unprocessed.  (*Id*.).  To the extent Plaintiff attempts to raise a claim under PREA, it does not provide a private right of action and, therefore, she may not assert a civil PREA claim.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002); *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020).

In light of the foregoing discussion, the safe housing claims be dismissed.

### 6.     Retaliation

In referring to the grievance complaining of retaliation by stopping chronic care treatment and breast cancer treatment, the Complaint states that "the grievance has not been exhausted . . . see 500194 . . . I felt I had no choice but to file before this one was exhausted"  (*Id.* at 22-23).  Plaintiff alleges retaliation occurred when the staff stopped chronic care treatments and would not see her for breast cancer issue she grieved in Grievance No. 500194.  (D.I. 1 at 22).  Grievance No. 500194, submitted April 6, 2020, complained Plaintiff's chronic care treatment was not continuing, surgery is delayed, there is no aid with cancer, all of which could lead to deaths by suicide.  Plaintiff withdrew the grievance on June 16, 2020.  (*See* D.I. 61 at 45-50; D.I. 63 at 63-68).  The Complaint states the issue was not fully exhausted when the Complaint was filed on April 20, 2020.  (D.I. 1 at 22-23).  Accordingly, the retaliation claim will be dismissed for failure to exhaust.

15

### 7.     GDCB

Plaintiff asked for the disbandment of the GDCB.  "The grievance (*i.e.*, 500189) was []
utilized to request the GDCB be disbanded, admonished, and it detailed out their malpractice and
life threatening damage they imposed.  It has not been exhausted for the same reason as
No. 500194".[4]  (D.I. 1 at 23).  Warden May wrote in this grievance No. 500189,[5] "This is not an
emergency.  Grievance may continue with the routine grievance process if she wishes."  (*Id.*).

Grievance No. 500189, submitted April 2, 2020, sought the disbandment of the GDCB.
The appeal was due July 16, 2020.  (*See* D.I. 59 at 85-94; D.I. 63 at 188-190).  The grievance
hearing date was July 1, 2020 and, therefore, administrative remedies were not fully exhausted
when the Complaint was filed.  (D.I. 63 at 190).  In addition, the Complaint states that the grievance
was not fully exhausted when it was filed on April 20, 2020.  (D.I. 1 at 23).  Therefore, the claim
will be dismissed.

### 8.     Deficient Pleading

As discussed, the Complaint alleges violations of the (1) the First, Fourth, Fifth, Eighth,
and Fourteenth Amendments presumably under 42 U.S.C. § 1983; (2) 42 U.S.C. §§ 1985 and 1986;
(3) the Americans with Disabilities Act; (4) the Religious Freedom Restoration Act; (5) the
Racketeer Influenced and Corrupt Organization Act; (6) and numerous Delaware statutes including
11 Del. C. § 1304(a) hate crime; 11 Del. C. §§ 222(26) and 28); 11 Del. C. § 763, sexual
harassment; 11 Del. C. §§ 6504, 6506(a), 6529(b); 11 Del. C. §§ 1258, 6517, and 6504 and 29 Del.
C. § 8903; and malpractice.

---

[4]     Complaining that her chronic care treatment is not continuing, surgery is delayed, there is
no assistance with cancer education, all of which could lead to deaths by suicide.

[5]     Seeking the disbanding of the Gender Dysphoria Consultation Board.

The remaining claims are deficiently pled.  For example, Plaintiff complains of the grievance process.  To the extent she bases her claims upon her dissatisfaction with the grievance procedure or denial of her grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  To the extent she attempts to impose criminal liability upon Defendants pursuant to Delaware Criminal Statutes, 11 Del. C. § 1304 (hate crimes), § 763 (sexual harassment), and § 1258 (escape and offenses relating to custody), Plaintiff lacks standing to proceed.  *Allen v. Administrative Office of Pennsylvania Courts*, 270 F. App'x 149, 150 (3d Cir. 2008); *see United States v. Friedland*, 83 F.3d 1531, 1539 (3d Cir. 1996) ("T]he United States Attorney is responsible for the prosecution of all criminal cases within his or her district.").  To the extent Plaintiff seeks to raise a medical negligence claim, she did not comply with the Delaware Health Care Negligence Insurance and Litigation Act, 18 Del. C. §§ 6801-6865, because at the time she filed the Complaint she did not submit the required affidavit of merit as to each defendant signed by an expert witness.  *See* 18 Del. C. § 6853(a)(1).

The remaining claims are not supported by facts and are conclusory, with naked assertions of statutory violations.  *See Iqbal*, 556 U.S. 677 (stating that a complaint will not suffice if it offers "'labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'") (quoting *Twombly*, 550 U.S. at 555, 557).  Merely reciting an element of a cause of action or making a bare conclusory statement is insufficient to state a claim.  *See id.*  Because the remaining claims do not meet the pleading requirements of *Iqbal* and *Twombly*, they will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## IV.    <u>**CONCLUSION**</u>

For the above reasons, the Court will: dismiss the Complaint for Plaintiff's failure to exhaust administrative remedies prior to commencement of this action, for failure to state claims upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and § 1915A(b)(1).  Plaintiff will be given leave to amend one claim – the hair removal claim raised in Grievance No. 395693.  Amendment is futile as to all other claims.

An appropriate Order will be entered.